## THE GEORGE W. ELZEY, JR.

### (District Court, E. D. New York. May 18, 1917.)

1. SALVAGE ⊂⇒38—APPORTIONMENT AMONG SALVORS.

Where a schooner lying at a burning pier was rescued, after being abandoned by those in charge of her, by courageous and extraordinary services on the part of the crew of a tug, and the danger to the tug was much less than that undergone by the members of the crew, the salvage services rendered by the crew should be viewed as a separate item, as should also those of the captain of the tug.

[Ed. Note.—For other cases, see Salvage, Cent. Dig. §§ 93–102.]

2. SALVAGE ⊂⇒27, 38—AMOUNT—APPORTIONMENT AMONG SALVORS.

A fire, destroying a pier at which a schooner was lying, had reached explosive material in cars alongside the schooner, and those in charge of her had abandoned her, when she was rescued by courageous and extraor-

⊂⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

dinary services on the part of the crew of a tug. The tug was worth from $10,000 to $12,000, but the danger to the tug was much less than that undergone by the members of the crew. The schooner before the fire was worth $45,000, and was damaged from $10,000 to $20,000. *Held*, that the salvage services justified an award of $13,500, of which $5,000 should go to the owners of the tug, $5,000 to the crew including the captain, and $3,500 to the captain individually.

[Ed. Note.—For other cases, see Salvage, Cent. Dig. §§ 65, 66, 93–102.]

In Admiralty. Proceeding by Frederick Bouchard and others against the schooner George W. Elzey, Jr. Decree for libelants in accordance with the opinion.

Foley & Martin, of New York City (J. A. Martin, of New York City, of counsel), for libelant.

Alexander & Ash, of New York City (Peter Alexander, of New York City, of counsel), for claimant.

CHATFIELD, District Judge. The services of the crew of the Gallagher in rescuing the Elzey upon the morning of July 30, 1916, were so courageous and extraordinary that it is impossible briefly to describe them or to adequately state their nature. Fire from the large explosions upon the Black Tom terminal worked to the east and reached explosive material in cars alongside the Elzey just before the rescue. The plight of the Elzey attracted the attention of those boats which had previously been working upon vessels near the scene of the large explosions, and the testimony shows that the Elzey could not have been saved from total loss unless removed from her position alongside the pier. The actual work of putting out the fire was done by the fireboat William L. Strong, but this could not have been accomplished if the Gallagher had not brought the Elzey out in the marvelous manner above referred to.

The tug Genesee, of the Lehigh Valley, claims to have participated in the rescue, while the captain and mate of the Genesee contradict the witnesses from the fireboat, police boat, the revenue cutter Hudson, another tug in the immediate neighborhood, and also the evidence from certain photographs taken by a man in a small motorboat, who took pictures as the Elzey was being towed out. The deck of the Elzey was covered with empty shells and quantities of high explosive powder, as well as with wreckage from the explosions and fire.

The Elzey was later in the same day taken to Erie Basin, where another serious dispute arises as to alleged participation by men from the Gallagher in the looting of certain stores and clothing, of which no further trace has been found. Any looting, which can have occurred, was of small amount. The great number of strangers upon the vessel and the removal of many shells as souvenirs, in boxes and bags, make it extremely doubtful that the crew of the Gallagher committed any acts which detract from their conduct in the rescue of the vessel. Much of the time policemen were present upon the boat, and the circumstances are such as to negative the conclusions reached by those spectators who make the charge of wrongdoing.

A fire occurring from the discharge of the scattered explosives, a couple of days later and after the boat had been redelivered to the own-

ers, has made it impossible to obtain conclusive evidence of the repairs then necessary to restore the Elzey; but the testimony of certain surveyors, who examined the boat in the interval before the second fire, indicates that the damage caused by the explosion and fire at Black Tom would run from $10,000 to $20,000. The value of the boat previous to the explosion was at the very least $45,000, and subsequent events would indicate that she could have been sold for considerably more.

[1] The tug Gallagher was worth from $10,000 to $12,000. The danger to the Gallagher was much less than that undergone by the members of her crew, and it must be held as a proposition of law that the salvage services rendered by the crew with the use of the Gallagher should be viewed as a separate item, as must those of the captain of the Gallagher, who deserves much of the credit of the rescue.

The overwhelming testimony of the witnesses from the other boats makes it impossible to credit the testimony of the witnesses from the Genesee, who claim for themselves substantially all of the credit for the rescue, and who make the captain of the Gallagher merely a meddlesome interloper, who interfered, and who took, according to their story, the boat away from her anchorage by cutting the anchor chain after she was safely riding at anchor.

The testimony in the case shows that the Genesee had been seeking to prevent other operations of the Gallagher in attempted salvage, previous to the time of the rescue of the Elzey, and but little weight can be given to the statements of these witnesses under the circumstances. No similar case of salvage has ever been brought to the attention of any court, so far as this court now knows. The elements of danger were such that no ordinary basis for an award can be found. The Elzey had been abandoned by those in charge of her, and would have been a total loss, in spite of the presence and assistance of the fireboat, if she had been allowed to remain at the pier, which, with many freight cars thereon, was completely destroyed. Like the rescue of an abandoned vessel at sea, in danger of total destruction, the saving of the Elzey must be attributed entirely to the acts of the Gallagher in the few moments which were left, when the Gallagher arrived upon the scene, before a rescue of the vessel became impossible.

[2] Such salvage services justify an award of $13,500, of which $5,000 should go to the owners of the Gallagher, $5,000 to the crew, including the captain, and $3,500 to the captain individually.

Let decree be entered accordingly.